ELLEN McAFEE v. McAFEE.

1. An appeal considered from an order which was not a final judgment, no question as to the right of appeal being raised by either party.
2. A married woman gave her note prior to 1882 in purchase of a due

bill and account owing by her husband in part for medical services rendered to herself, and then more than six years past due, and the husband, for his indebtedness thus acquired by his wife, gave to her a mortgage of land. *Held*, that this mortgage was based upon a sufficient consideration, and was not void as against existing creditors of the husband. The fact that the wife's note has not yet been paid does not affect this question.

3. An agreement by a husband with his wife, that money thereafter earned by her personal services should belong to her, would be without consideration, and would be a gift to the wife of that which belonged to her husband. Therefore a mortgage given by the husband to secure the repayment of these earnings, alleged to have been borrowed by him from his wife, is not valid as against existing creditors.

4. The liability of an administrator to the distributees of the estate, commences at the date of his bond and continues until he has fully performed his trust. Such distributees are not, therefore, subsequent creditors to a mortgage executed after administration granted, but before *devastavit* found.

Before NORTON, J., Chester, July, 1887.

This was such an action as is stated in the opinion. In the matter of both the claims upon which the plaintiff's mortgage was based, the testimony is vague, owing, perhaps, to the fact that both John T. M. McAfee and Dr. McLurkin were dead when the case was heard by the referee.

*Mr. W. A. Sanders*, for Mobley, appellant.

*Mr. J. J. Hemphill*, for plaintiff. Upon the subject of the husband's right, even as against existing creditors, to waive in his wife's favor his right to her services not yet rendered, counsel cited 1 *Bish. Mar. W.*, §§ 159–161; 2 *Ibid.*, § 457; 12 *Rich.*, 202; 8 *Ibid.*, 50; 2 *Rich. Eq.*, 273; 2 *Bish. Mar. W.*, §§ 454, 458, note 2, 420, 51, 460; 1 *Ibid.*, §§ 735, 742.

March 5, 1888. The opinion of the court was delivered by

MR. JUSTICE McIVER. On the 15th day of May, 1880, John T. M. McAfee, who is the intestate of the defendant, John C. McAfee, executed a mortgage to the plaintiff on a tract of land containing 565 acres, to secure the payment of eleven hundred and twenty-eight 58–100 dollars, alleged to be due for money

borrowed at sundry times by the intestate from his wife, the plaintiff herein. On October 1, 1880, a portion of the mortgaged premises was sold and conveyed by the mortgagor to one C. J. Moore, leaving about 400 acres subject to the lien of the mortgage, the plaintiff having on the same day released her lien, without consideration, on the portion so sold. On May 13, 1882, this action was commenced for the foreclosure of said mortgage, and the appellant, Mobley, who was subsequently made a party by the order of the court permitting him to come in and defend the action,[1] set up the following defences: 1st. That the mortgage was pretensive and without valid consideration. 2nd. That it was made with intent to hinder, delay, and defraud the creditors of the mortgagor. 3rd. That the plaintiff concurred in such intent. 4th. That if there ever was any valid consideration for the mortgage, it has been paid in full. 5th. That the appellant is now the legal owner of the premises, and in possession thereof.

The issues of law and fact were referred to a referee, who found as matter of fact that the consideration of the mortgage was of a twofold character: 1st. A claim held by Dr. McLurkin against the mortgagor, which had been purchased by the mortgagee. 2nd. Money derived from the personal services of the plaintiff, in making clothes for third persons, and from the sale of butter, made by her during coverture, with the consent of her husband, from cows belonging to him; that the debt to Dr. McLurkin consisted of a due bill and an unitemized account for medical services, amounting on the day when the plaintiff settled it—the day before the mortgage was executed—to the sum of $169.95; that the plaintiff settled[2] with Dr. McLurkin by giving her individual note for a sum less than the debt, which note has never been paid; that the purchase money of the land sold to C. J. Moore was applied to the satisfaction of a judgment in favor of Biggers Mobley against the mortgagor, entered in 1867, and to the satisfaction of a mortgage on the same land given to the Messrs. Hemphill on May 7, 1880, leaving a small balance which was applied to the payment of advances made by the defendant, John C.

[1] See *Ex parte Mobley*, 19 *S. C.*, 337.

[2] The precise language of the referee's finding is that the plaintiff *purchased* this claim.—REPORTER.

McAfee, to the mortgagor, his father, for supplies for the family and the plantation that year; that plaintiff and intestate were married in 1856, and at that time her whole estate consisted of some sixty or seventy dollars, and that her name first appears on the tax books as a taxpayer in 1882 for $585 worth of personal property, and in 1883 for $600; that in 1860 John T. M. McAfee was appointed administrator of the estate of Thomas Wright, and the appellant, Mobley, was one of the sureties on his administration bond, the other surety having died many years since intestate and insolvent, and that in July, 1879, proceedings were instituted by the distributees of Wright against John T. M. McAfee, as administrator, which culminated in a final decree against him, in favor of the distributees, for the sum of $2,168.72, on April 25, 1882; that on April 27, 1882, the land embraced in the mortgage was levied on by the sheriff under said judgment or decree, and on June 5, 1882, the same was sold and bid off by the appellant, Mobley, for the sum of $700, who now holds sheriff's titles for the same; that the parties entitled to the benefit of said decree, assigned their interest therein to the appellant, most of them before the sale made by the sheriff, and that since said sale John T. M. McAfee had no other property subject to levy and sale.

Upon these facts, the referee found as matters of law: 1st. That the earnings of a wife derived from her personal services belonged to her husband, and, hence, that the money derived from such services, which was claimed to have been borrowed by the husband from the wife, not being a valid debt, constituted no valid consideration for the mortgage, and that the arrangement between the husband and wife as to the money, made by her in the manner above stated, amounted, at most, only to a gift, which could not be made to the prejudice of the husband's creditors. 2nd. That as to so much of the consideration as rested upon the satisfaction of the debt to Dr. McLurkin, it could not be sustained, because, at that time, all but seventeen dollars of the debt was barred by the statute of limitations, and this, together with other circumstances mentioned in the report of the referee, satisfied him that the arrangement was not in good faith, and, as against

the distributees of Wright and their assignee, Mobley, it cannot constitute a valid consideration for the mortgage.

To this report both parties filed exceptions, and the case was heard by Judge Norton upon such report and exceptions, who overruled the referee's report as to the McLurkin debt, holding that so much of the consideration of the mortgage as rested upon that debt was good and valid. He also held that so much of the plaintiff's claim as arose from her personal services, except where the money received for such services had gone into the possession of her husband prior to the adoption of the constitution of 1868, was a good and valid debt due by her husband to her, and, therefore, a valid consideration for the mortgage; but that so much of her claim "as arose from the property, to wit, the cows belonging to John T. M. McAfee, as distinguished from plaintiff's services, in using them, is not a valid and binding claim," and, therefore, constitutes no valid consideration for the mortgage. He, therefore, recommitted the report to the referee, with instructions to inquire and report the amount due on the mortgage under his rulings above. From this decree both parties appeal upon the several grounds set out in the record, which we deem it unnecessary to repeat here.

It will be observed, that, in fact, there has not yet been any final judgment rendered in the case, but as no question has been raised either in the record or in the argument here in respect to this, we will not volunteer to do so, inasmuch as, under the view which we take of the case, much unnecessary and troublesome inquiry will be avoided.

Both the referee and the Circuit Judge seem to have passed without consideration the fact that the plaintiff had released the lien of her mortgage on that portion of the mortgaged premises sold to C. J. Moore by the mortgagor, which was relied on by appellant as a fraud upon the creditors of the mortgagor and an additional badge of bad faith in the execution of this mortgage; and this is made the subject of complaint by the appellant, both in his exception to the referee's report and in his grounds of appeal. Inasmuch, however, as much the larger portion of the purchase money received from Moore appears from the testimony to have been applied to the satisfaction of liens *antecedent* to the

plaintiff's mortgage, leaving only a small balance, which was applied to the payment of advances made during that year for the support of the family and plantation, we do not think it can have any weight in the present inquiry. The real questions raised by the appeal are : 1st. As to the McLurkin debt. 2nd. As to the earnings of the wife derived from her personal services.

As to the first question, we concur in the view which seems to have been taken by the Circuit Judge. We see no sufficient reason why the amount of that debt should not constitute, to that extent, a valid consideration for the mortgage. As the law then stood (in 1880), a wife might legally assume the payment of a debt due by her husband, and this is really what the plaintiff did. The fact that a very large part of this debt, though not the whole of it, could have been defeated by a plea of the statute of limitations, does not necessarily imply that the assumption of it by the plaintiff was any evidence of fraud. If the debt had not, in fact, been paid, of which there is no pretence, though the *legal* obligation was gone, the *moral* obligation to pay it still remained, and, as has been often held, constituted a sufficient consideration for a new promise to pay it. And when the character of the debt is considered, a large part of it, perhaps, for medical services rendered to the plaintiff personally, there seems to be the strongest reasons why the debt should not only be acknowledged, but adequate provision made for its payment.

One of the facts relied upon by the referee, as characterizing this transaction with bad faith—that the amount of the note given to Dr. McLurkin was less than the amount of his claim—does not seem to be supported by the testimony. For the referee, in his report, finds that the amount due Dr. McLurkin on the day of the settlement (May 14, 1880) was $169.95, and in the "Case" we find that "It is admitted that the note from Mrs. Ellen M. McAfee to Dr. McLurkin was for $170, and dated May 14, A. D. 1880;" so that, in fact, she gave her note for five cents *more* than the amount of the claim, instead of "for a less sum than the said debt," as stated by the referee.

Neither do we think that another fact relied upon by the referee—that the note given by plaintiff to Dr. McLurkin has never been paid—is sufficient to show any want of good faith.

Now, if it had appeared, as it did not, that the understanding *at the time* was that the note should not be paid, that would have been a very weighty circumstance to show bad faith. But the mere fact, that the note has not yet been paid, cannot have any such effect. The question is as to the intention of the parties at the time. When the plaintiff gave her note, she became legally liable to pay the amount mentioned therein, and such liability, thus assumed, to pay her husband's debt, would then have constituted a valid consideration, to that extent, for the mortgage then given.

We see, therefore, no sufficient reason why the mortgage in question may not be enforced for the amount of such debt, with the interest thereon.

As to the second question, we cannot concur in the view taken by the Circuit Judge. There is no doubt that, at common law, the earnings of a married woman, derived from her personal services, belonged exclusively to her husband, and we have recently determined in the case of *Bridgers* v. *Howell*, 27 *S. C.*, 425, that this rule has not been changed or in any way affected either by the constitution or by any statute which had, up to that time, been adopted; and certainly the recent act, passed at the last session of the general assembly, upon this subject, cannot affect the transaction now under consideration, as it took place long anterior to the passage of such act.

The counsel for the plaintiff has, in his able and ingenious argument here, undertaken to distinguish this case from the one just cited. He contends, as we understand it, that while it may be true that, in the absence of any antecedent agreement between the husband and wife, the proceeds of the wife's personal services would belong exclusively to the husband, yet where there is an antecedent agreement, by which the husband stipulates with the wife that such earnings as she may derive from her own personal services shall belong to her exclusively, the rule would be otherwise, and the exclusive right of the wife to such earnings as she might make after such agreement was entered into, would be recognized. We are unable to see what would be the consideration for such an agreement. At common law, which, in this respect, had not been changed by constitution or by statute at

the time the transaction here under consideration occurred, the husband, by reason of the relation in which he stood to his wife and his obligation to provide for her support, was regarded as absolutely entitled to her time and services, and if he allowed her to receive the fruits or earnings of her services, it must be as a mere gift, as there could be no basis for a contract. It would be nothing more than a gift of that which he would otherwise be entitled to, for which he receives no consideration. While it may be true that a wife is under no obligation to perform such service as would yield income, yet the moment she does so, such income belongs to the husband; and the fact that she has been induced to enter upon such service by a promise on the part of the husband that, if she does so, he will waive his legal right to her earnings, and allow her to receive the same to her own use, cannot invest the transaction with the character of a contract, for there is no valuable consideration moving from her to him. He receives nothing, but simply gives up something that would otherwise be his.

Under this view, we have not deemed it necessary to consider whether the testimony, which, to say the least of it, is somewhat vague and indistinct, would be sufficient to establish such an antecedent agreement as would be necessary to support the legal proposition contended for by plaintiff's counsel; nor whether the character of the services, from which the largest part of the wife's earnings arose—milking her husband's cows and making butter—were such as, under the circumstances, the wife could properly decline to render, without an agreement with her husband that she should be entitled to the proceeds. In any aspect, it seems to us that such an agreement could not amount to anything more than a gift from the husband to the wife, which could not stand as against existing creditors.

The case of *Boozer* v. *Addison* (2 *Rich. Eq.*, 273, 46 *A. D.*, 43), relied on by counsel for plaintiff, does not support his view, as that case rests upon a different principle from that invoked here. In that case a married woman taught school during coverture, and the money received by her for tuition fees was loaned out by her to third persons, and a note taken payable to her alone, which remained in her possession until the death of her

husband. After the death of the husband, his creditors, under a proceeding for the settlement of his estate, claimed that the note was part of the assets of the husband's estate; but it was held otherwise, not, however, upon the ground contended for here, but upon the ground that the note was a chose in action accruing to the wife during coverture, and not having been reduced to possession by the husband during his life-time, it survived to the wife upon his death.

Here, however, there was no chose in action, and, therefore, no room for the doctrine applied in *Boozer* v. *Addison.* The money which the plaintiff received from the sales of butter and from sewing for third persons, at once became the property of the husband as soon as it was received, and, as such, liable for his debts, notwithstanding any agreement or promise of the husband, without consideration, as we have seen, that she should be allowed to retain it for her own use. In *Boozer* v. *Addison*, it appeared that there was an antecedent agreement between the husband and the wife, like that set up here, but the court, ignoring that altogether, rested its decision upon a wholly different ground; that if a chose in action is given to the wife during coverture, and the same is not reduced to possession by the husband, upon his death it survives to the wife.

The only remaining inquiry is, whether the appellant, Mobley, or rather the distributees of Wright, whose rights he has acquired by assignment, were existing creditors of the mortgagor at the time of the execution of the mortgage. We think they were. The liability of the mortgagor and his obligation to discharge such liability arose when he assumed the administration of the estate of his intestate, and such liability continued until it was discharged by the performance of all the duties required of him by the terms of his bond. When the assets of his intestate were placed in his hands for administration, he at once became a debtor to the distributees for whatever amount might be found in his hands, as the proceeds of such assets, after he had paid the debts and the expenses of the administration; and the fact that the *amount* of such indebtedness was not ascertained until after the execution of the mortgage, cannot affect the question. If, at the date of his administration, he had given a note to the distributees for a spe-

cified sum of money, upon which he claimed to have made sundry
payments, some or all of which were disputed, surely the fact that
such note was not reduced to judgment until after the execution
of the mortgage, and the amount really due thereon thereby ascer-
tained, would not deprive such note of the character of an exist-
ing debt at the date of the mortgage. Upon the same principle,
it seems to us that the fact that the judgment against the mort-
gagor in favor of the distributees of Wright was not recovered
until after the execution of the mortgage, cannot, as contended
for by the counsel for plaintiff, deprive such debt of the character
of a debt existing at the date of the mortgage.

This view is supported by the case of *De La Howe* v. *Harper*
(5 *S. C.*, 470), where the same *principle* was recognized and
applied, though the question arose in a different way. In that
case an administrator, whose bond bore date in 1863, was called
to account, and in 1871 a compromise decree was rendered against
him. When the sheriff undertook to enforce the execution issued
on such decree, the administrator set up a claim of homestead,
and the question was whether the debt antedated the constitution
of 1868. The court held that it did, notwithstanding the fact
that the *devastavit*, as well as the judgment or decree, was after
the adoption of the constitution of 1868. This was upon the
principle, that the obligation of the contract upon which the
defendant was made liable arose prior to the adoption of the con-
stitution, notwithstanding the fact that such liability was not fixed
or ascertained until afterwards. This case is, in fact, stronger
than the one just cited; for here it appears that the action, which
culminated in a judgment against the mortgagor in favor of the
distributees of Wright, was commenced before the execution of
the mortgage, from which it must be inferred that the *devastavit*
was committed before the date of the mortgage. It follows, there-
fore, that the distributees of Wright were existing creditors of the
mortgagor at the date of the mortgage, and the appellant, as their
assignee, stands in their shoes, entitled to all their rights.

The judgment of this court is, that the judgment of the Circuit
Court, in so far as it sustains the mortgage to the amount of the
McLurkin debt, be affirmed, but in so far as it sustains the mort-
gage for any portion of the wife's earnings, it be reversed, and

that the case be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the views herein announced.