HURSEY et ux. v. LANE.

In re HURSEY.

(Circuit Court of Appeals, Fourth Circuit. December 14, 1916.)

No. 1454.

1. FRAUDULENT CONVEYANCES ⊚⟹296—EXISTENCE OF PECUNIARY OBLIGATIONS —EVIDENCE.

Relative to H. having been under pecuniary obligations at the time of his voluntary conveyance to his wife, sought to be set aside as fraudulent, introduction of the contract for sale to H. by N. of fertilizer, entered into by H. with N.'s agent, and by its terms requiring approval by N. and notice thereof to H. in order to be operative, with the word "Approved" stamped thereon as of a date before the conveyance, and below the word "Confirmed," is at least prima facie proof of confirmation of the contract by notice to H. of its approval.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 891; Dec. Dig. ⊚⟹296.]

2. FRAUDULENT CONVEYANCES ⊚⟹214—EXISTING CREDITORS.

The seller to H. of fertilizer, by a contract by which it was to be charged to H. and his notes given therefor, was a creditor within the protection of the law against voluntary conveyances by a debtor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 639, 640; Dec. Dig. ⊚⟹214.]

3. FRAUDULENT CONVEYANCES ⊚⟹57(3)—AMOUNT OF INDEBTEDNESS AND PROPERTY.

For a retail merchant, engaged in the hazardous business of making advances on the faith of crops to be grown by his customers, when in-

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
238 F.—58

debted for 375 tons of fertilizer, and having as his other assets a stock of $3,000, lots worth $4,800, and $5,000 in bank, to convey to his wife the lots, with undertaking to build· thereon a storehouse at a cost of $3,800, which he afterwards did, was not within the rule that a gift will be valid, if the donor's debt be inconsiderable relative to the whole of his property, and the property conveyed inconsiderable relative to the donor's entire assets, so that the gift will not materially increase the hazard of his creditors. \

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 148; Dec. Dig. ☞57(3).]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston, in Bankruptcy; Henry A. M. Smith, Judge.

Action by Joe. P. Lane, trustee in bankruptcy of John A. Hursey, bankrupt, against John A. Hursey and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

W. C. Moore and W. H. Muller, both of Dillon, S. C. (Sellers & Moore and Gibson & Muller, all of Dillon, S. C., on the brief), for appellants.

Louis M. Swink, of Winston-Salem, N. C. (Mitchell & Smith, of Charleston, S. C., and G. G. McLaurin, of Dillon,` S. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The defendant John A. Hursey was adjudged a bankrupt in December, 1914. His indebtedness was about $15,000 and his assets about $1,000. The trustee brought this action to set aside a conveyance from Hursey to his wife, Mattie Hursey, of five lots in the town of Dillon for the expressed consideration of $500 and love and affection. The District Court held on the evidence that there was no actual fraud in the transaction, and on this point there is no assignment of error. The appeal involves the two questions whether the District· Court was right in holding: First, that there was an antecedent debt or obligation to the Navassa Guano Company; and, second, that the deed was voluntary and invalid as to that debt. At the time of the conveyance Hursey was a merchant in the town of Dillon. The evidence fails to show that he was under any pecuniary obligation at the time, either fixed or conditional, except such as may have been assumed by a contract dated January 10, 1911, for the purchase of 375 tons of fertilizers from the Navassa Guano Company. The contract was taken by the company's traveling agent and contained the stipulation that it should "be operative only after being approved by the company's home office." No fertilizer was shipped under it until February 13, 1911, after the execution and record of the deed.

[1] It is true that no obligation fell on either party to this contract until it was approved by the home office and notice given to Hursey of approval. Before approval and notice to Hursey, the paper was a mere proposal subject to withdrawal by either party Baird v. Pratt, 148 Fed. 825, 78 C. C. A. 515, 10 L. R. A. (N. S.) 1116; Mon-

eyweight Scale Co. v. Gordon Merc. Co., 102 S. C. 419, 86 S. E. 1060. But we are unable to agree that there was no evidence of approval and notice to Hursey. On the original contract introduced are stamped the words, "Contract approved Jan. 11, 1911," and below these the word "Confirmed." The only confirmation or ratification that could have been meant was notice to Hursey of approval. The paper so stamped was introduced without objection as expressing in its entirety the contract, and it furnished at least prima facie proof of the confirmation of the contract by notice to Hursey of its approval. Although Hursey was a witness, he did not deny the confirmation indicated on the face of the paper; indeed, the record of the trial indicates that the completeness of the contract was assumed. The District Judge could not have regarded the question of confirmation of the contract seriously made, since he does not allude to the point in his opinion.

[2] The contract contemplated that the fertilizer should be charged to Hursey and his notes given therefor, and this clearly shows that Hursey was the purchaser and that his liability was a primary obligation. He was so absolutely bound by the execution and confirmation of the contract that had he refused to take the goods, the fertilizer company would have had a right of action for breach of contract. The seller was therefore a creditor within the protection of the law against voluntary conveyances by a debtor. McAfee v. McAfee, 28 S. C. 188, 5 S. E. 480; Barrett v. Still, 102 S. C. 19, 86 S. E. 204.

[3] The other question is: Was the deed from Hursey to his wife voidable as a voluntary deed? It is not possible to reconcile the divergent statements of the law found even in courts of high authority on the subject. We understand the law in South Carolina to be as stated by the District Judge, as follows:

"The rule may be stated to be that slight indebtedness, such as for current expenses for a family or debts inconsiderable to the value of the donor's estate, will not generally avoid a voluntary conveyance; but, subject to this qualification, it seems to be a settled rule of law that one who is in debt cannot make a voluntary conveyance which will prevail against existing debts." Blakeney v. Kirkley, 2 Nott & McC. (S. C.) 544; McElwee v. Sutton, 2 Bailey (S. C.) 128; Izard v. Middleton, 1 Bailey, Eq. (S. C.) 228; Richardson v. Rhodus, 14 Rich. (S. C.) 95; Anderson v. Pilgram, 41 S. C. 423, 19 S. E. 1002, 20 S. E. 64; Barrett v. Still, 102 S. C. 53, 86 S. E. 204.

The rule is thus well stated in Bispham's Equity (7th Ed.) page 375:

"The true rule seems to be that the gift will be valid if the 'donor has, at the time, the pecuniary ability to withdraw the amount of the donation from his estate without the least hazard to his creditors, or in any material degree lessening their prospects for payment.'"

The consideration of $500 was not nominal, but it was altogether inadequate. The lots were worth four or five times that amount. Such inadequacy shows always either imposition, or some other consideration entering into the transaction. It is not logical to say that a conveyance made without actual fraud must be either altogether

voluntary, and therefore voidable, or altogether for value, and therefore valid. It may be, as this deed was, for value to the extent of the money paid, and voluntary to the extent that love and affection entered into it; that is, to the extent of the difference between the money paid and the known value of the property. So this deed was voluntary to the extent of the value of the property over the $500. McMeekin v. Edmonds, 1 Hill, Eq. (S. C.) 294, 26 Am. Dec. 203; Anderson v. Fuller, McMul. Eq. (S. C.) 35, 36 Am. Dec. 290; Werts v. Spearman, 22 S. C. 219. The obligation assumed to pay for the fertilizer in no view can be regarded inconsiderable in its relation to the whole of the donor's property, nor can the property conveyed be held inconsiderable in its relation to the entire assets of the donor. The debtor was engaged in the hazardous business of a retail merchant making advances on the faith of the crops made by his customers. His chief assets were a stock of goods worth $3,000, the fertilizer purchased, the lots conveyed to his wife, estimated at $4,-800, and cash in bank $5,073.72. In the transaction with his wife, he undertook to build a storehouse on the property conveyed requiring an outlay, which was afterwards made, of $3,800. This mere statement of the matter shows that the donation made by Hursey to his wife, so far from being an inconsiderable depletion of his assets, effected a radical change in his business status, greatly increasing the hazard of his creditors.

The question whether equity will require repayment from the proceeds of sale of the $500 actually paid by Mrs. Hursey has not been passed on by the District Court, and it would not be proper for this court to anticipate it. Indeed, the question will disappear, should Mrs. Hursey elect to exercise the right fixed by the District Court to pay the debt of the Navassa Guano Company and retain the property.

Affirmed.