## 9223

## MONEYWEIGHT SCALE CO. v. GORDON MERCANTILE CO.

### (86 S. E. 1060.)

SALES.   ORDERS OR OFFERS TO PURCHASE.   COUNTERMAND.   ACCEPTANCE. SELLER'S REMEDY.

1. SALES—ORDERS—COUNTERMAND.—A written order for, and offer to purchase, goods is not converted into a contract by its mere reception by the traveling salesman of the selling agent of the offeree, and may be countermanded or withdrawn before its acceptance.

2. SALES—ORDERS—ACCEPTANCE.—An order for goods, or offer to purchase, must generally be accepted before a contract is made.

3. SALES—ORDERS—ACCEPTANCE.—An order for goods and offer to purchase goods involves an intent which must be expressed by words or acts.

4. SALES—ORDERS—COUNTERMAND.—An agreement not to countermand an order for, or offer to purchase, is of no force unless supported by some consideration.

5. SALES—SELLER'S REMEDY (PER HYDRICK. A. J.)—The seller's remedy for breach of contract to purchase is by action for damages, and not for purchase price.

6. SALES—"ACCEPTANCE"—ACTS CONSTITUTING.—Defendant signed an instrument prepared by plaintiff, which was in terms an order to plaintiff to ship defendant five computing scales at a certain price. The instrument also provided "that this shall not be countermanded." This paper was delivered, together with a check for $25, to a salesman of plaintiff's selling agent, and by him transmitted by mail to plaintiff.   Before the goods were shipped, defendant countermanded the order by telegraph, but plaintiff nevertheless shipped the machines and stored them in a railroad warehouse upon defendant's refusal to accept them, and brought an action for the price.   *Held,* that there was no acceptance of the offer, and consequently no contract, since a mere determination of the will to accept an offer does not constitute an acceptance; there must be words written or spoken or some other overt act, and the mere reception of the offer is not sufficient.

Before SHIPP, J., Greenville, October, 1914.   Affirmed.

Action by Moneyweight Scale Co. against Gordon Mercantile Co.   From order for nonsuit, plaintiff appeals.   The

FOOTNOTE.—As to right to withdraw order given agent before acceptance by principal, see note in 10 L. R. A. (N. S.) 1138.

facts are stated in the opinion.    The paper writing in question was as follows:

Scale No. Shipped..........Date........191...      Ledger Folio......
Scale No. Delivered.........Date........191...

County, Greenville, 2/22, 1913.

P. O. Address, Greenville, S. C.

To the MONEYWEIGHT SCALE Co., 165 N. State St., Chicago.

Please ship to me (or us) F. O. B. Greenville, S. C., at the following address: Gordon Merc. Co., as soon as possible, 5 Computing Scales, as described herewith, f o r which...agree to pay you the sum of $570.00 Dollars, as follows: Cash with order, $25.00; allowance of $100.00 for 2 old Computing Scale, kind

5    Computing Scale
Style No. 3 #114's, 1 #115, 1 #167
Equipment #144—2 to 40c
Graduation 115—3½ to 30 D
Capacity 144 s    169—5 lbs.
          155      30 lbs.
Open........        Current D. C......
Face       If Electric      A. C......
Closed..........        Volts 110
                                220

Strubler and Slumpson.    Number........(upon condition that said old scale, if not delivered to the salesman, be shipped to the Computing Scale Co., Dayton, O., by prepaid freight WITHIN ONE WEEK from date of receipt of new scale, and bill of lading mailed to Moneyweight Scale Co., 165 N. State St., Chicago), and a balance of..........Dollars, payable as evidenced by note hereunto attached.

(If salesman takes possession of exchange scale he must so state in writing on this line.)

Should there be any failure to promptly pay such note for deferred payments, or any installment thereof, or if you should feel yourselves insecure, or if I (or we) should sell or assign, or attempt to sell or assign, the said scales, or if any suit should be commenced against me (or us), or if any writ of distress warrant should be issued against me (or us), or levied upon any of my (or our) property, or if I (or we) should fail or refuse to accept said scale or countermand or attempt to countermand this order without due cause, then the whole unpaid balance of the said purchase price shall, at your option and without notice to me (or us), become due and payable, and in case said property shall be in my (or our) possession at the time of my (or our) default in any or all of the particulars mentioned above, you may take possession of and remove it as and for your own, with or without legal process and without any previous demand upon me therefor; and all payments previously made by me (or us) may be retained by you as your liquidated damages, and I

hereby waive all right given me by the statutes of this State or otherwise, to demand or receive of you any portion of such price previously paid by me (or us), in case you do retake said scale on account of my (or our) default in any or all of the above particulars.

It is further agreed that the title to said scales shall not pass from the Moneyweight Scale Company until the same shall have been paid for in full, and that until such time the said scales shall remain the property of said Moneyweight Scale Company. It is also agreed that the bringing of any suit for the price of said scales shall not operate to vest the title thereto in me (or us), but said scales shall remain the property of said Moneyweight Scale Company until any judgment recovered for its price shall have been paid. In case of recovery by legal process, all Court costs and attorney's fees shall be paid by the purchaser whose name is hereunto attached. Said scales are to be held by me (or us) at my (or our) own risk pending the vesting of title in me (or us), and no injury, loss or destruction of said scales by any cause whatever, except your fault, shall release me (or us) from the obligation to pay said purchase price.

This contract to continue in full force and effect as to any other scale that may be sent in exchange for the one originally delivered

It is expressly agreed that this shall not be countermanded.

This contract covers all agreements between the parties.

I (or we) have read and understand the above contract and hereby acknowledge receipt of duplicate.            Signed,  GORDON MERC. Co.
R. E. PARRISH, Witness.

Draw Through Brandea Savings Bank.

The salesman is not authorized to collect a sum to exceed that of the regular first cash payment, as shown by our printed price list.

---

$415.00.      Town, Greenville.      State, S. C.      Date, 2/22, 1913.

For value received I (or we) promise to pay to the order of MONEYWEIGHT SCALE Co., 165 N. State Street, Chicago, Illinois.

Payable as follows:  Balance $415.00 net cash 30 days........Dollars.

| | | |
|---|---|---|
| Jan........191 $.... | May........191 $.... | Sept........191 $.... |
| Feb........191 $.... | June........191 $.... | Oct........191 $.... |
| Mch........191 $.... | July........191 $.... | Nov........191 $.... |
| April......191 $.... | Aug........191 $.... | Dec........191 $.... |

With New York or Chicago Exchange.

(Sign Here)  GORDON MERC. Co.

Ledger Folio    Note: The above note draws interest at 6% per annum
......  ........from date of shipment; or delivery, if delivered by sales-
......  ........man. If ALL installment payments are mailed to our office promptly on dates specified, interest will be waived, but unless each and every payment is made promptly, full interest will be charged on entire notes. If account is paid in full 30 days from date of shipment 5% discount will be allowed as well as interest waived.

*Messrs. McCullough, Martin & Blythe,* for appellant, cite: *As to futility of countermand:* 89 S. C. 470. *Seller's remedy:* 24 A. & E. Enc. of L. 1118 and 1120; Williston on Sales, sec. 562; 28 S. C. 224; 43 S. C. 39, 44; 68 S. C. 363; 65 N. W. 963; 78 N. W. 33.

*Messrs. Cothran, Dean & Cothran,* for respondent, cite: *As to seller's remedy:* 7 A. & E. Enc. L. 95; 68 S. C. 367; 78 S. C. 207; *Ib.* 427; 35 Cyc. 532; 24 A. & E. Enc. 1118, 1030, 1131; 56 Am. Dec. 645; 22 L. R. A. 80; 52 Iowa 307; 16 L. R. A. 655; 37 Vt. 244; 3 Hill 223; Dudley 371; 18 Atl. 1058; 47 S. C. 229; 26 L. R. A. (N. S.) 248; 59 L. R. A. 122; 178 U. S. 1; 15 Otto 224; 66 S. C. 75; 33 Pac. 897; 132 S. W. 926; 133 N. W. 59; 135 S. W. 365; 84 S. W. 786; 38 Pac. 392; 80 S. E. 484. *Agreement not to countermand:* 1 Benj. Sales (4 Am. Ed.), sec. 41. *Right to countermand:* 46 S. C. 223; 47 S. C. 229; 84 N. Y. Supp. 154; *Ib.* 569; 28 Pa. Sup. Ct. 91; 59 N. W. 600; 47 N. W. 962. *Acceptance:* 7 A. & E. Enc. of L. 129; 13 S. C. 94.

October 28, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The appeal is from an order of nonsuit.

The action is for the price of five computing scales worth $570.

The transaction is evidenced by a paper writing, which will be reported, signed by the defendant, and called by the plaintiff a contract evidencing the sale of goods, and called by the defendant an order for or offer to buy goods.

The plaintiff sued on the paper for $571.25, the price of the scales and the cost of protest fees upon an unpaid check.

The answer plead several defenses.

The testimony tends to show that the plaintiff resided in Chicago, and sold the moneyweight scale, which was manufactured in Dayton, Ohio; that the defendant resided in

Greenville, S. C.; that the Southern Scale and Fixture Co. resided in Columbia, S. C.; that one Parrish was traveling, salesman for the Columbia concern, and that the Columbia concern was agent to sell the scales, and had authority to make sales without submitting offers to purchase to the principal; that on the 22d February, at the instance of Parrish, the defendant signed the paper writing and delivered it to Parrish with a check for $25 as "cash with order," under the contract; that the Columbia concern had in stock at that time no computing scales, as it sometimes had, and it sent the order direct to Dayton to be filled; that there was never any formal acceptance of the order; that it was defendant's duty to forward to plaintiff some old scales which were to be counted at $100 in part payment for the new computing scales, but it did not do so, and that feature of the transaction is obliterated; that on the 26th February the defendant directed, by telegram, the plaintiff not to send the scales, and that direction was received before the scales were shipped out; the directions were ignored, the scales shipped, and are now in railroad warehouse at Greenville, and have been ever since; that payment of the check was refused, and the same was protested.

The plaintiff's six exceptions and the defendant's three "additional grounds" make nine nominal issues.

But there are not nearly so many questions to be decided.

The plaintiff suggests that the evidence tends to prove that Parrish was the authoritative agent for the plaintiff to sell scales; that, therefore, Parrish did sell scales and took from defendant $25 as part payment on the scales, and under that act and the paper signed by defendant, the defendant was entitled to have the scales and the plaintiff was entitled to have the balance in money; that the plaintiff might have had one of three remedies: (1) Store the scales and sue for the price (that pursued in the instant case); (2) sell the scales and sue for any deficiency; (3) keep the

scales and sue for any difference betwixt the contract and the market price.

The defendant suggests, that the paper writing is but an offer to buy scales; that the plaintiff's first privilege thereabout was to accept or to reject the offer; that until that privilege had been exercised, the defendant had the right to withdraw the offer; that the offer was withdrawn before acceptance; that plaintiff's duty in any event was to minimize the damages, and, therefore, to sell the scales and sue for any loss it may have sustained on the transaction.

The paper writing, and it alone, evidences the transaction; so much is expressly provided in it, if the law had not also so provided.

The plaintiff concedes, that if the defendant had sent the order by mail from Greenville, without the presence or intervention of Parrish, then the defendant might have lawfully countermanded the order.

But the plaintiff insists, that when Parrish stood by the defendant, the Moneyweight Company stood there, and it sold the defendant the scales; that is, it received the offer and then and there instantly accepted it and completed the contract of sale. If that be so, there was a sale, and the plaintiff is entitled to recover. If that be not so, the plaintiff's case falls to the ground.

If the issue goes against the plaintiff all other issues became irrelevant.

We think on that issue the plaintiff must lose.

1       The plaintiff itself has made the paper writing the sole arbiter of the transaction between the parties.

That instrument is in *terms* an *order* to the Moneyweight Scale Co. to ship the defendant five computing scales, at a price. It provides in words "that *this* shall not be countermanded."

The paper writing is not denominated.

It is true, the paper suggest at one point that it is a "contract,"—"this contract covers all agreements," etc.

But that circumstance does not constitute it a contract.

If the Moneyweight Company had been present in person in place of Parrish when the paper was signed, it could not say the paper meant other than it expresses.

It does not now say the paper expresses aught but an order for goods, which must generally be accepted before a contract is struck.

It does not say if it, the Moneyweight Company, had been there, as it says it was in the person of Parrish, and both wrote and received the paper, then such act of reception itself constituted an implied acceptance of the order.

Whether the offeree does accept involves an *intent,* and such intent must be expressed by words or by acts.

"A mere determination of the will to accept an offer does not constitute an acceptance; there must be words, written or spoken, or some other overt act." "The Doctrines of the Law of Contracts," by Bishop, sec. 183.

In the instant case there was no words of acceptance written or spoken. The only overt act was the reception of the offer. The payment of $25 was but a part of the offer.

If the mere reception of an offer itself constitutes an acceptance of it, then the case ought not to be altered when the reception is through the agency of the mail through long distance. But plainly and concededly, if the reception of the offer had been by mail at Chicago, that would not have been an implied acceptance.

To conclude that a manual and personal reception of an offer on the heels of its making is acceptance of it, is to ignore the essential character of an offer, and to eliminate it from the transaction.

It may be that if an individual offeree should in his proper person and immediately upon its execution, receive from the offerer's hand the paper writing containing the offer, that fact, with the attendant circumstances, might

warrant a submission to the jury whether the act of receiving amounted to an implied acceptance of the offer.

But where, as in the instant case, the offer is made and is delivered to a salesman, and not a salesman of the offeree, but a salesman of their selling agent, and by him transmitted by mail to the principal, it is not fairly inferable that the reception of the offer amounted to its acceptance.

And the case is not mended though the principal should testify as it did, that in their judgment they would have had no right of rejection of the offer under the words of the writing.

The right to accept involves the right to reject; and whether under the circumstances the plaintiffs would have the right to reject, depends not on what they say, but depends upon the law and the testimony of the case.

An endorsement of acceptance on the offer would have constituted express words of acceptance.

A sending of the goods before the countermand, would have been an overt act implying acceptance.

The case is not helped by the testimony of witnesses that Parrish had the power and apparent authority to sell. The answer in the paper he drew shows he did not exercise that power, but offered to sell.

The argument that had the plaintiff refused to deliver the defendant might have lawfully sued the Moneyweight Company on the contract of sale, is an argument in a circle. The same question would arise there as arises here.

The case cited by appellant, *The Seneca Co.* v. *Crenshaw,* from 89 S. C. 470, 71 S. E. 1081, does not decide the question which is made here.

There is no denial here that the agreement not to countermand is of no force, unless the defendant got some consideration for such an agreement, and of that there is no proof.

In the Seneca case above referred to, the offer had been accepted by the overt act of shipping out and delivery of the goods, and the offerer had shipped them back.

The contract was struck in that case.

Our judgment is, the order of nonsuit must be affirmed, and it is so ordered.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and FRASER concur in the opinion of the Court.

MR. JUSTICE HYDRICK, *concurring*.  I concur in the result.   If this action could be maintained for the purchase price of the goods ordered, I think the evidence required submission to the jury of the issue whether there was an acceptance of the order before it was countermanded.   But, if it be conceded that there was an acceptance, still the nonsuit was proper, because, in that view of the case, plaintiff's remedy, under the admitted facts, was an action for damages for the breach of the contract, and not an action for the price of the goods.   This is sustained by the authorities cited by respondent.