## DIAL v. LEVY.

1. ASSIGNMENT FOR CREDITORS—RENT—CASE CRITICISED.—A distress warrant cannot be levied on goods, in the hands of an assignee under a general assignment for creditors, for rent which was past due before the execution of the deed of assignment, as such goods do not then belong to the tenant in his own right. Bischoff *v.* Trenholm, 36 S. C., 75, approved and followed.

2. IBID.—IBID.—STATUTES.—The act of 1892, 21 Stat., 114, permitting distress for rent where there is an assignment for creditors, does not govern cases where a distress was levied and action brought for the recovery of the rent prior to the passage of this statute.

3. IBID.—IBID.—IBID.—CASE CRITICISED.—The statute (Gen. Stats., § 1824,) which forbids goods taken from a tenant under execution, or any pretence whatsoever, to be removed from the premises until arrearages of rent are paid, has no application to goods transferred to an assignee under a deed of assignment for creditors; and such goods are not primarily liable for unpaid and past due rent. This case distinguished from Brewster *v.* McNab, 36 S. C., 278.

Before WALLACE, J., Richland, October, 1892.

This was an action by W. H. Dial and M. A. Tozer, partners as the Dial Hardware Company, against J. C. C. Levy, as assignee of W. M. Maxwell and in his own right, commenced August 13, 1892. The opinion states the case.

*Mr. John Bauskett,* for appellant.

*Mr. John McMaster,* contra.

May 22, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The appeal in this case is from an order of Judge Wallace dismissing the complaint for the reason that it did not "state facts sufficient to constitute a cause of action; and, therefore, it is necessary to set out the allegations of the complaint, which were as follows, substantially:

I. That on August 1, 1892, one William M. Maxwell was indebted to the plaintiffs in the sum of $47.50, for the rent of a store in Columbia—$42.50 for the month of July, and $5 due on rent for the month of June, 1892.

II. That on August 5, 1892, whilst still occupying said store, he executed and delivered a deed of assignment to the defendant Levy of all his property, for the benefit of his creditors, a general assignment, which provided first that the costs of the assignment and commissions of the assignee be first paid, then that lien creditors should be paid, then the balance to be distributed *pro rata* among the creditors unsecured.

III. That William M. Maxwell left nothing of value in his store except show cases, an iron safe, desk, gas fixtures, and a few pounds of smoking tobacco, &c., worth perhaps in the aggregate $100.

IV. That these plaintiffs caused a distress warrant for the amount of $90 to be levied on the said goods and chattels, which were of said William M. Maxwell previous to the execution of said deed of assignment on August 5, 1892, and while the said goods were on said premises, to wit: for $5, balance due on rent for the month of June, 1892; $42.50 for the month of July, 1892, and $42.50 for the month of August, 1892, into which he had already entered.

V. That after making said levy under their distress warrant for said rent, the attention of these plaintiffs was called to the decision of the Supreme Court of South Carolina of date April 21, 1892, in the case of *Bischoff* v. *Trenholm*, where it was decided that a landlord could not distrain for rent after a deed of assignment had been executed, although the case of the Piedmont Company[1] had decided that it could be done. These plaintiffs, in submission to the law as expounded, withdrew their warrant for distress, and gave notice in writing to the defendant, forbidding him to remove said goods and chattels from said premises without paying said rent, as is provided for in section 1824 of the General Statutes, the same not being more than one year's rent.

VI. That notwithstanding said notice, and against the protest of these plaintiffs, the said defendant has removed the said goods and chattels, wares and merchandise from the said premises, and is about to dispose of the same, to the irremediable loss of these plaintiffs, as said Maxwell is insolvent, the said Levy owns no property in his own right outside of the homestead exemptions, and the said goods and chattels, wares and merchandise so assigned, will not amount to enough to cover the indebtedness for rent, for which under section 1824, General Statutes, these plaintiffs claim the first lien, and to pay the expenses, commissions, &c., of said assignment; that said goods will pay the one or the other, but not both.

VII. That if the plaintiffs in this action have not a statutory lien on said goods and chattels under said section 1824, then they claim an equitable first lien on said goods and chattels prior to any other lien not matured, under the decision of *Brewster* v. *McNab & Walker* (April 21, 1892), and in other decisions running back to colonial days of this country, the only necessary step to perfect and secure the same being the issuing and levying the distress warrant, which was done in this case and in all cases heretofore, but raised on account of the decision in *Bischoff* v. *Trenholm.*

VIII. That if said goods are sold and the proceeds applied

---

[1] 34 S. C., 554.

under said deed of assignment, these plaintiffs will suffer an irreparable loss, and outside of this honorable court they are without remedy, &c.

· Wherefore, the plaintiffs pray: *First.* That the said Levy, as assignee as aforesaid, be enjoined from selling or disposing of, or in any manner interfering with, said goods and chattels until the further order of this court. *Second.* That the priority of the lien of these plaintiffs for the rent of said store be established, and that the said rent be paid out of the first moneys received from the sale of the said goods, when ordered to be sold, in preference to any and all other liens or claims. *Third.* That the said Levy replace the said goods on the said premises as they were before removal, or pay to these plaintiffs the rents for the months of June, July and August as aforesaid, and for such other relief as may be just and equitable, &c.

On the complaint being sworn to and submitted to Judge Kershaw, he granted a restraining order in the meantime, and directed a rule to be served upon J. C. C. Levy to show cause before the presiding judge of the Circuit why the injunction as prayed for should not issue. By consent of the parties, the rule was made returnable before Judge Wallace in Columbia, and was there heard by him on October 29, 1892, when he made the following order: "This cause having come on for a hearing, and the defendant having interposed a demurrer on the ground 'that the complaint does not state facts sufficient to constitute an action,' ordered, that the complaint be dismissed," &c.

From this order the plaintiffs appeal to this court upon the following grounds: 1. Because his honor erred in holding that no good and substantial wrong was complained of by plaintiffs against defendant, and no good and substantial prayer for relief was contained in said complaint. 2. Because the complaint contains allegations of substantial wrongs done by the defendant to the plaintiffs, and substantial prayers for plaintiffs' relief against said defendant.

The order of Judge Wallace dismissing the complaint does not state the reasons for holding that the complaint did not state facts sufficient to constitute a cause of action; and the

exceptions are very vague and indefinite, only stating in the most general terms, that "the complaint does contain allegations of substantial wrongs done by the defendant to the plaintiffs." Although the debtor Maxwell owed for the rent of the store, we take it he had the right, as a citizen under the general law, to make an assignment for the benefit of his creditors and to provide for the reasonable expenses of executing it, leaving the question of priorities to be determined by the proper authority. On August 5, 1892, William M. Maxwell executed a general assignment for the benefit of his creditors to J. C. C. Levy, as assignee, and delivered to the assignee the property assigned. At that time the law (section 1826 of the General Statutes) declared as follows: "And no property shall be seized under a distress warrant for rent except such as belongs to the tenant in his own right."

Concluding that, after the assignment and the delivery of the property to the assignee, the debtor assignor could not properly be considered as the owner of the property "in his own right," this court held in *Bischoff* v. *Trenholm*, 36 S. C., 75: "That property on the demised premises in the possession of an assignee for the benefit of creditors, does not belong to the assignor (debtor) in his own right, and, therefore, cannot be distrained for rent past due by him before the execution of the deed of assignment," &c. In regard to the right claimed in this case, to levy a distress warrant on the property after the assignment, we are unable to distinguish this case from that of *Bischoff* v. *Trenholm, supra*. It is true that the law above cited was amended on December 24, 1892 (21 Stat., 114), so as to read as follows: "And no property shall be seized under a distress warrant for such (arrears), except such as belongs to the tenant in his own right: *Provided*, That nothing herein contained shall interfere with, or in any manner abridge, the right of such lessor or landlord to take or seize any or all of said goods and chattels wherever they may be found, as a distress for arrears of rent, where any tenant so in arrears shall make an assignment for the benefit of his creditors." But this act was not made retrospective, and the transaction under consideration having taken place *before* the passage of the act, this

case must be determined according to the law as it stood at the time the assignment was executed.

Conceding this, the plaintiffs properly, as we think, withdrew their warrant of distress; and they served notice upon the assignee of their claim for rent, insisting that rent had priority over all other claims against the assets, and that as such the assignee was bound to pay it *first,* under section 1824 of the General Statutes, which declares: "That no goods or chattels whatsoever, lying or being in or upon any messuage, lands or tenements, which are or shall be leased, &c., * * * shall be liable to be taken by virtue of any execution or any pretence whatsoever, unless the party at whose suit the said execution is sued out shall, before the removal of such goods from off the said premises by virtue of such execution or extent, pay to the landlord of said premises, or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking of such goods or chattels by virtue of said execution: *Provided,* The said arrears of rent do not amount to more than one year's rent," &c. This is an old English provision made of force in this State, and, of course, it could not have been intended to apply, and does not apply, to the late amendment of our law of distress, which forbids the levying of a distress warrant upon any property, "except such as belongs to the tenant in his own right"—that is to say, such as he has not *bona fide* transferred. In the case of *Brewster* v. *McNab*, 36 S. C., 278, cited by the plaintiff, the debtor lessee had not sold or assigned his property, and the only question was between the landlord's right and an agricultural lien. It is stated in the case itself that "the property belonged to the tenant, subject only to the liens."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.