HERCULES MFG. CO. *v.* WALLACE.

[86 South 706.   No. 21419.]

1. SALES. *Order may be accepted by shipping goods ordered.*
   Where a written contract signed by the purchaser, but providing that it would become a contract on the acceptance being written therein and such contract is sent to the office of the seller and the outfit ordered is shipped the buyer, such contract is accepted by the seller by such act and is binding, though not accepted in writing by the seller.
2. SALES. *Where accepted contract offered in evidence error to direct verdict.*
   Where such contract is offered in evidence with proof of the acceptance and shipment before order countermanding is received, it is error to direct a verdict for the buyer on the ground that there was no contract.

APPEAL from circuit court of Tate county.
HON. E. D. DINKINS, Judge.

Action by the Hercules Manufacturing Company against J. H. Wallace. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

J. F. DEAN, for appellant.

While there are two assignments of error, they will be argued together, as they stand or fall together.

The contract in this cause is a regular printed form, usually given out to salesmen procuring orders. It is partly written and partly printed. At the bottom of contract are the printed words: "Upon the acceptance by the dealer, in the space below, this order becomes a contract between the dealer and the purchaser, etc. The court held that because the contract was not actually signed by the dealer, it did not become a contract, was not binding on defendant and was not admissible as evidence, although the contract contained the written stipulation that it was

not subject to cancellation and it was duly signed by defendant, and promptly performed by plaintiff.

Our contention is that it was practically a cash transaction. A check was given and accepted as cash payment for one-half of the contract price and the contract showed that there was a three per cent. discount for cash. Under the circumstances, all that appellant was required to do, under the contract, was to ship the goods, as agreed and this it did as promptly as possible. The order was taken on Saturday the 9th and the goods shipped on Monday, the 11th day of the same month, the first business day after the order was given. If the contract had not therefore been mutual, it became so when the goods ordered by appellee were delivered to his agent, the common carrier, for of course when it was delivered to the railroad for him, it was delivered to him and became his property and the contract was performed by appellant whether the contract was actually signed by it or not. If appellee received what he bought he could not complain that appellant had not signed the contract before delivering to him what he had bought. The clause complained of by appellee was solely for the benefit of appellant and if it waived it and shipped the goods, appellee has no just cause of complaint.

In *Atkinson* v. *Whitney,* 67 Miss., 655, the point here involved seems to have been decided. In that case there was a contract of the sale of lands which involved mutual stipulations and was signed by Atkinson but was not signed by the Whitneys, the owners of the lands. Notwithstanding the fact that they did not sign the contract as it was contemplated they should, the court says: "It is true appellees did not sign the agreement, exhibit A, but they have in every possible way signified their consent and adhesion thereto. They did every thing the agreement required them to do and the court said 'and appellees now tendering their deed to the property in accordance with the contract, we are of the opinion that the contract is enforcible against the appellant, the person who signed the written agreement and the person sought to be charged

in .this suit.' In this important particular, the case of *Marquese* v. *Caldwell,* 48 Miss., 30, seems directly in point."

In *Storm* v. *United States,* 24 L. Ed. 42, in discussing a situation precisely similar to the case at bar, the court said: "Where the defendant has actually received the consideration of a written instrument, it is no answer to an action brought against him for a breach of his covenants in the same to say that the agreement did not bind the plaintiff to perform the promises on his part therein contained provided it appears that the promises in question have in fact been performed in good faith and without prejudice to the defendant." See, also, *Robson* v. *Miss. Lof. Co.,* 61 Fed. 898; *Park* v. *Kelly,* 49 Fed. 625, *Marie* v. *Garrison,* 83 N. Y. 26, and other cases cited in *Storm* v. *U. S.,* above cited.

The doctrine of mutuality should only be considered when the party seeking performance has not himself performed. 28 Am. & Eng. Ency. Law, 32; *Percy* v. *Haughton,* 17 So. 378; Waterman, Specific Per. Cont., page 270, section 201, and notes. I especially refer the court to *Minneapolis Threshing Machine* v. *Zenmark,* 106 N. W. Rep. 6, May 8, 1906, where defendant gave the plaintiff company a written order for a traction engine to be delivered on June 25, with the provision that the order should not bind the company until approved by it, the engine was shipped and arrived on July 6th, and the court held that there was a sufficient acceptance of the order by the company to convert it into a mutually binding contract.

In the Zemaruk case the defense was precisely the same as here. His counsel insisted that inasmuch as there had been no acceptance of the order so as to convert it into a binding contract, defendant was under no obligation to accept the engine. The court held otherwise. See, also, *McCormick* v. *Beed,* 107, Iowa, 340.

In *Moline Scale Co.* v. *Beed,* 52 Iowa, 307, the court says: "The tender of the property in accordance with the terms of the contract entitles the seller, if the goods are

specifically procured or prepared, to fill the particular order to recover the purchase price. Here the goods were prepared for shipment to defendant and the soil pipe bought specially for him for that particular order."

In *Altman* v. *Nilson,* 84 N. W. 692, the court said: "No further acceptance of a written order for a machine than a delivery of the machine is necessary."

In *Rock Island Plow Co.* v. *Meredith,* 78 N. W. 233, the court said where defendant ordered, subject to plaintiff's approval certain goods which were to be shipped at a future date, such approval was sufficiently manifested by the shipment of such goods within the time specified in such order.

In *Henderson* v. *Henderson,* 114 N. W. 178, the court says: "Signature is not always essential to the binding force of an agreement, for if accepted and acted upon by the parties as a binding agreement mutually appears without formal signature, this is elementary."

I call the attention of the court to the fact that there is no issue here of rescission or cancellation of the contract before the goods were shipped. That is an issue of fact which has not been tried. No facts were submitted to the jury. All the oral testimony was as to the admissibility of the written contract, taken before the court in the absence of the jury. The court held as a matter of law that the contract was not admissible because it was not signed by plaintiff, and granted a peremptory instruction for defendant, which in view of all the above authorities, we believe was flagrant error and we respectfully ask that this cause be reversed and remanded for a new trial.

*Holmes & Sledge,* for appellee.

The order sued on never became a contract for the reason that it was never accepted by the dealer, and the order does not show who the dealer was. In case Mr. Wallace had not investigated and found out that the generator and appliances ordered by him were not as represented to him, he would have had no warranty or guarantee signed by any dealer and no one to whom he could have

looked for breach of the order, and no suit could have been maintained by him thereon, for failure of warranty, or otherwise. The order not being directed to anyone, and providing on its face that it should not be a contract until accepted by the dealer in the space below.

It is "Horn Book" law, that the offerer has a right to prescribe the time, place, form, or other condition of acceptance, in which case the offer can be accepted only in the way prescribed. Thus, the offer may require that it be accepted within a certain time, in which case an acceptance after that time will be of no affect. Lawson on Contracts (4th Ed.), sec. 18.

It is also well settled that a contract requires the meeting of the minds of the parties, and if there is an attempt to reduce to writing the agreement of the parties, the signature of one to the agreement will not bind the other, especially where the written agreement or order provides that it is not to become a contract until the offer of purchase is accepted by the other party in writing on the instrument itself in the form provided therefor. Mr. Wallace never received his copy of order, "accepted" from any one.

If the Hercules Manufacturing company, or whoever received the order, had declined to fill said order and ship the goods, Mr. Wallace would have had no recourse, because the order had never become a contract. It is perfectly clear that the minds of the parties never met, and the verbal statements made by Mr. Darnell on the witness stand do not show a meeting of the minds of the parties, and no contract was ever effected. *Insurance Co.* v. *McIntosh,* 96 Miss. 236, 38 So. 775. And we call the court's special attention to the case of *Yazoo & Miss. Valley R. R. Co.* v. *Jones,* 75 So. 550.

The court will not enforce unilateral contracts, where the proposed vendor brought suit for breach of such contract against the vendee, and the contract provided for the acceptance in a certain manner, that is the acceptance thereof to be in writing on the instrument itself, the

seller not being bound until accepted, neither was the purchaser, and the latter might withdraw from it before it became mutually binding by acceptance in the manner agreed upon. *Atlanta Buggy Co.* v. *Hess Spring and Axle Co.,* 124 Ga. 338, 52 N. E. 613.

The case of *Atkinson* v. *Whitney,* 67 Miss. 655, cited by opposing counsel, has no application to the case at bar for the reason, that in the Atkinson case a deed of trust was given to secure a large debt, which was unsecured, and the agreement for the executing of the deed of trust was that if the plantation covered by the deed of trust had to be sold for the satisfaction thereof that it would not be sacrificed at a forced sale but by agreement the parties were to unite, after condition broken in the deed of trust, and have the lands fairly appraised, and the party for whose benefit the deed of trust was given was to purchase the lands at appraised value. This last agreement was not signed by both parties, but they did in every way possible signify their consent and adhesion thereto. They joined in having the lands appraised, and in writing accepted the action of the appraisers as binding on them and executed the proper conveyances to the land and tendered same to the other parties for their signatures; a very different state of facts from the case at bar. In the case at bar, the order was not to become a contract until accepted by the dealer, and appellee was to have time to investigate the generator, it requiring about two weeks to ship same, before the order was accepted, before it became a contract, before the goods were shipped, the office of the appellant, at Chattanooga, Tennessee, was notified both by telegraph and registered letter to cancel the order. The fact that appellant was trying to put one over on appellee is evidenced by the testimony of C. L. Darnell, when he stated that he mailed the order at Coldwater, Mississippi, on Saturday night; and when he discovered that there was no mail leaving Coldwater until the following Monday afternoon, he then changed his testimony and said that he mailed the letter

in Memphis; and further, correspondence of appellant shows that he was trying to force his goods on appellee, who did not want them, and although the appellant had received notice of cancellation of the order, the goods were shipped or a part of them, with notice to the appellee, on March 16, 1918, that he was expected to take this machine "and are going to hold you to your order."

The other case cited by opposing counsel are found upon examination, to have no application to the case at bar, because there are facts in each one different from the case at bar, which the court announced were controlling. Appellant attempted to bind appellee by a written instrument that appellant was not willing to be bound by itself.

The question of fraud that was perpetrated upon appellee is not before the court at this time, because the trial judge correctly, we think, excluded the order. If appellant had brought suit on *quantum meruit*, then some of the cases cited by him might have been of some weight but when he bases his action on an order that was never a contract, we most respectfully submit that the case was correctly decided in the court below, and should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant sued the appellee on a contract written in the following words:

"Mar. 9, 1918.

"M. .......... (hereinafter designated the dealer).

"Please furnish the following generator and appliance f. o. b. Chattanooga, Tenn., to be delivered ..... hereinafter designated the purchaser, one Hercules generator of 100 pounds carbide capacity. .... dozen ...... burners ...... ½ft. ...... 4½ ft. ...... ¾ ...... 9.1 ft.

...........................................................

| Quantity. | Number. | In what part of house does Lights. | Length. | Finish. | Fixture Co. |
|---|---|---|---|---|---|
| 3 | 1003 | 2 | 2' 6" | O C | With gooseneck holders |
| 1 | 149 | 1 | 2' 6" | " " | With veneered holders |
| 2 | 965 | 1 | 2' 6" | " " | .................... |
| 7 | 110 | 1 | 1' 6" | Block | .................... |
| 2 | 1668 | 2 | 2' 6" | O C | .................... |
| 2 | 165 | 1 | 2' 6" | " " | With movered holders |
| 22 | 157 A | igniters | .... | .... | .................... |

1 can of carbide .................................................................

"This order is not subject to cancellation.

"Pipe residence, store, garage and stable building for gas, leaving openings for fixtures in places specified, assemble and hang above fixtures and install and place generator in operation. Run pipings underground to generator approximately five hundred and forty-three feet, also to all approximately ...... feet. Purchaser agrees to haul material and workmen from railroad station, board workmen who install apparatus and equipment, furnish helper and furnish platform or suitable foundation for generator or if a pit generator purchaser agrees to have hole dug for same.

"For which I, the purchaser, agree to pay ($425) four hundred and twenty-five dollars. Terms: Less three per cent. for cash $203.75 received balance when generator is installed.

"Warranty: It is agreed that in accepting this order the dealer guarantees that the generator furnished is made by the Hercules Manufacturing Company, of Chattanooga, Tenn., and it is a thoroughly durable galvanized generator, of good workmanship and material, automatic in action.

"It is further agreed that in accepting this order the dealer guarantees that the fixtures and other accessories furnished shall be of good material and workmanship and the piping, fixtures and generator shall be installed in a good workmanship manner, free from leaks.

"The generator and other articles shall remain the property of the dealer until said generator and other articles shall have been paid in full; and in event of default in any payment ...... agree to surrender possession of said generator or other articles mentioned above immediately to the dealer, or possession may be regained by the dealer in the same manner as provided by law for the enforcement of any conditional sale contract.

"Upon the acceptance by the dealer in the space below, this order becomes a contract between the dealer and the purchaser, it being understood that it covers all of the agreement between them and cannot be added to or modified except by agreements in writing.

"Accepted this ...... day of ........, 191..
"............................, Dealer.
"By ....................
"Salesman ....................
    "J. H. Wallace, Purchaser.
    "Coldwater, Miss., Shipping Point.
    "Independence, Miss., Post Office."

It took in part payment the check for two hundred three dollars and seventy-five cents dated the same day, which check was in due course presented for payment and was not paid, but protested. The defendant pleaded that the contract was fraudulently procured and that it was not indebted to the plaintiff in any sum whatever. The plaintiff offered to introduce in evidence the contract, which was objected to because the form for acceptance was not signed by the seller and for that reason it was contended

the contract never became effective. The plaintiff introduced C. L. Darnell, who testified that he owned the corporation, the plaintiff, that is, that he was the sole owner of all the stock and that he took the contract himself and accepted the contract by consenting to it and shipped the lighting plant before receiving the letter seeking to cancel it; that the sale was made on Saturday, and the shipment made on the following Monday; that on receipt of the defendant's letter seeking to countermand he notified the defendant he could not countermand it. There was a conflict in the testimony between the witness for the plaintiff and for the defendant as to what took place between Darnell and Wallace; Darnell contending that the defendant desired the lighting plant shipped at once, and Wallace contending that Darnell represented that it would take about two weeks before the goods arrived, during which time he could countermand. The court refused to admit the contract in evidence and rendered a judgment for the defendant. From which judgment this appeal is prosecuted.

We think the court erred in excluding the evidence from the jury that the order of Wallace was accepted when the lighting plant was shipped or placed in the car for shipment at Chattanooga. If this lighting plant was actually loaded into the cars by the Hercules Manufacturing Company before the receipt of the order or letter seeking to cancel it, the defendant had no right to cancel, provided there was no understanding at the time of the taking of the order that Wallace had an agreement with Darnell which authorized him to cancel it before the delivery. The check given shows on its face that it was for the purchase of this lighting plant and was itself sufficient to satisfy the statute of frauds. We do not now decide whether the acceptance of the order by delivery of the lighting plant, without the signature of the Hercules Manufacturing Company to the contract, would exclude the evidence of the defendant as to an oral understanding. But it was error to refuse to admit the evidence offered by the plaintiff.                    *Reversed and remanded.*