13199

EX PARTE STACKLEY ET AL.
LUCAS & BRUNSON v. GOTHAM BRAID WORKS, INC.

(159 S. E., 622)

*Messrs. Samuel Want* and *Melvin Hyman,* for appellants,

*Messrs. Philip H. Arrowsmith* and *Preston B. Thames,* for respondents.

July 14, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Gotham Braid Works, Inc., was engaged in the manufacture of braids in New York. In 1928 negotiations were begun between it and the secretary of the Chamber of Commerce of the City of Florence, S. C., looking to the removal of the plant to Florence. In the view which we take of this case it is unnecessary to enter into a recital of the terms of the agreement. Suffice it to say that the Chamber of Commerce undertook to, and did, sell bonds to finance the undertaking and to pay off a mortgage held in New York on the personal property of the concern. To secure the bonds thus to be issued, and which were issued, the corporation agreed to give a mortgage on its personal property, constituting its plant. This mortgage purported on its face to have been signed February 1, 1929, by the corporation and the trus-

tee of the bonds. The probate of the signature of the President was made February 4, 1929; that of the Secretary February 11, 1929; the mortgage was recorded in Florence County February 16, 1929. In December, 1928, Mr. Cohen, president of the defendant company, came from New York to Florence, and whilst there agreed with Stackley and Burch for the lease of the premises described in the pleadings. The lessors agreed to make certain alterations and repairs to the premises which, it appears from the evidence, were not completed until after March 1, 1929. It is admitted that the machinery and equipment of the corporation arrived in Florence February 4 and 5, 1929, and were delivered the 7th and 8th of February. Some of it, possibly all of it, was placed in a part of the ground floor of the building; but whether any of it was set up then does not appear. It does appear from the testimony that the building was not then completed, and that the rent, by agreement, did not begin to run until the first of March. Rent was paid for the months of March and April, 1929. In the spring of 1930 it was apparent that the concern had gone upon the shoals, and a receiver was appointed, before April 28, 1930, to take charge of its affairs. The exact date of such appointment does not appear. It was made in the case of *Lucas & Brunson, a Corporation, et al., Plaintiffs, v. Gotham Braid Works, Inc., Defendant.*

April 28, 1930, respondents herein filed their petition in the Court of Common Pleas for Florence County, praying: "That a rule may issue out of this Court requiring the said W. D. Douglas, as receiver of the Gotham Braid Works, Inc., to show cause why the rent of your petitioners should not be fixed as a first and prior lien on the machinery, fixtures, wares and merchandise and other property of the said Gotham Braid Works, Inc., and why out of the proceeds arising from the contemplated sale, to be had on May 15, 1930, your petitioners should not be paid out of the first funds derived therefrom."

Accordingly the rule did issue; and "it was agreed that the testimony taken at this reference shall be the return of the receiver to the order of Judge Shipp."

In due time his Honor filed his decree in which he held that the landlords had the first claim for rent, and ordered the receiver to pay them in full.

The appeal by the receiver states several grounds, but in our opinion the cardinal and controlling questions arise upon the construction and application of Sections 5286 and 5283, Civil Code 1922, Vol. 3. Section 5286 is in these words: "In all cases where property distrained for arrears of rent is subject to the lien of a mortgage placed upon said property before the rent contract was entered upon or before said property was brought upon the rented premises, the landlord shall have the right to pay the amount due upon such mortgage debt, and subject said property to the payment of the same, as well as to the payment of the amount due for rent."

The petitioners and the learned Circuit Judge proceeded upon the theory that the landlord has a lien upon the property of his tenant for rent in arrears.

In a most interesting and able opinion in the case of *Fidelity Trust & Mortgage Co. v. Davis,* reported in 158 S. C., 400, 155 S. E., 622, 625, the present Chief Justice reviewed the common-law and statutory regulations of the relation of landlord and tenant, and announces this conclusion: "It is thus seen that these statutes give a landlord no lien on the personal property of his tenant, other than on the crops raised on the demised premises, for rent due by his tenant. While the landlord has no lien on such personal property, yet the statutes have preserved to him, in a modified form, his common-law right to distrain on such property."

It is conceded that the landlords in this case have not distrained. Did they lose their right to distrain after the property went into the possession of the receiver who was appointed by order of Court? If they did, in what position are they left?

This very situation is clearly considered and decided in the case *In re Bishop* (D. C.), 153 F., 304, 305, in which the South Carolina statutes regulating the landlord's claim of priority for rent was construed. In that case, Bishop, a merchant, was adjudged a bankrupt. He was in arrears for rent. The referee allowed the claim of the landlord as a prior claim and ordered it paid. Certain creditors of the bankrupt petitioned the Court to set aside the order of the referee allowing the claim. Judge Brawley of the District Court in an able opinion said:

"The question presented is whether or not the claim of the landlord for rent * * . * is entitled to priority of payment out of the proceeds of the sale of the goods. The petitioners allege that inasmuch as he never exercised his right as landlord by a distraint, he has no lien or right to priority of payment. * * *

"While a voluntary proceeding in bankruptcy is in effect equivalent in some respects to an assignment for the benefit of creditors, there is this essential difference—that inasmuch as the adjudication of bankruptcy is a judicial act, and thereby the property is taken *in custodia legis,* the landlord cannot distrain upon such property. It would be a contempt of Court for any constable or any other agent of the landlord to interfere with the possession of the Court. If such a levy were attempted, the landlord would gain nothing by it. In the case *In re Duble* [D. C.], 117 F., 794, it was held that:

" 'A landlord, who, after his tenant, owing more than a year's rent, is adjudged bankrupt, distrains for the full amount of the rent due, takes nothing by the proceeding, as all the goods of the bankrupt are *in custodia legis.' "

So, in the case we are considering, the property of the braid works was in the possession of the receiver appointed by order of Court; it was *in custodia legis.* If the landlords—the intervenors here—had attempted to distrain, they would have been in contempt of Court. In what position then were they left? The question is satisfactorily

answered by the *Bishop case, supra,* from which we quote again:

"The provisions of the statute of South Carolina under which this priority of payment is claimed is to be found in Section 2427 of the Code of Laws of South Carolina, 1902 [Section 5283, Vol. 3, Code, 1922], which is as follows:

" 'Sec. 2427. No goods or chattels whatsoever lying or being in or upon any messuage, lands, or tenements, which are or shall be leased for life or lives, term of years, at will or otherwise, shall be liable to be taken by virtue of an execution or any pretense whatsoever, unless the party at whose suit the said execution is sued out, shall before the removal of such goods from off the said premises, by virtue of such execution or extent, pay to the landlord of the said premises, or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking of such goods or chattels by virtue of such execution: Provided, that said arrears of rent do not amount to more than one year's rent; in case the said arrears shall exceed one year's rent, the party at whose suit such execution is sued out, on paying the said landlord or his bailiff one year's rent, may proceed to execute his judgment and the sheriff or other officer is hereby empowered and required to levy and pay to the plaintiff as well the money so paid for rent as the execution money.' "

Continuing the quotation from the *Bishop case:* "The Court, however, holds that inasmuch as by this action in taking possession of the property the landlord is prevented from making an actual levy and distress, that the Court will permit him to present his claim as a preferred claim, and claim in priority what is due to him as landlord. *In re Hoover* (D. C.), 113 F., 137, the Court, citing the Act of Pennsylvania, similar in effect to the Act of South Carolina, held: 'The bankrupt Court having taken possession of this property thus liable for the rent, its process whereby the same was sold must, for the purpose of this statute, be re-

garded as an equitable execution. The case is within the equity of the statute.' And the claim for rent due at the time of taking such goods under the adjudication in bankruptcy, not exceeding one year's rent, was allowed."

Other cases to the like effect are cited in the opinion; and it was held in the *Bishop case* that the claim of the landlord, being for less than one year's rent, should be paid in full.

Thus it is made to appear that, whilst the landlords have no lien for their rent until they have levied by distress therefor, nevertheless, if they are prevented from exercising the right to distrain by the process of the Court, which takes the property of the tenant *in custodia legis,* the claim for priority of the landlord will be protected to the extent of one year's rent.

It would appear from the text of the Circuit decree now under review that the landlords were entitled to the full amount of their rent, without limitation of time. We think they are only entitled to it for one year, and only then if so much be in arrears. However, as it appears that their claim is for less than one year, there is no harmful error in this respect in the Circuit decree.

We have not considered the exceptions severally. Most of them are based upon questions of fact. An analysis of the evidence set out in the transcript of record discloses that there is evidence to sustain the findings of fact of the Circuit Judge.

We do not understand that the Circuit Judge held just what is charged to him in Exception 5. He held that the South Carolina bondholders, whose money paid off the New York mortgage, must be held to know that the landlords had the prior claim for their rent. If the bondholders desired to preserve the priority of the New York mortgage, they should have had it assigned and kept open; instead they canceled it. It is evident that the bondholders did not rely on that mortgage for their security and priority, but upon what is styled the Florence mortgage. They were dilatory in

executing it, and in consequence the personal property was placed on the rented premises before the mortgage was executed.

Exception 6 proceeds upon the assumption that "it was the intention of all parties in interest that the Florence mortgage should be treated as having been executed on February 1, 1929, before the chattels went on the premises of the landlords." We do not find that the evidence sustains that assumption. There is nothing in it to show that the landlords assented to that proposition. On the contrary, there is evidence to the effect that the landlords understood that their "rent would come first."

The evidence does not sustain the contention that it was the intention of the parties to execute the chattel mortgage (the Florence mortgage), on a special date—February 1, for instance. It is true that the bonds are so dated; but they were not delivered then, nor were they ready for delivery. The mortgage was signed as of that date, by some one or more of the officers, but the execution of it was never completed until February 11. Hence the issue made by Exceptions VII and VIII have no force.

The contention that the landlords are estopped to claim priority as against the Florence mortgage because they were "aware of the purpose and intention of all parties in interest that the rent lien should be subordinate to that of the beneficiaries under the Florence mortgage" is not sustained by the evidence. There is no evidence that the intervenors—the landlords—ever understood or assented to the proposition that the bondholders should have a preference over their claim for rent.

This is apparently a hard case for the bondholders. They undertook to finance the removal of the braid works from New York to Florence. Their purpose was public spirited and patriotic. Such enterprises oftentimes entail losses upon those who undertake them. In this instance some one intrusted with the conduct of the enterprise

seems to have been slow about it. And in consequence the personal property was put on the premises before the chattel mortgage was executed. The situation brings the case under the rule announced in *Morgan S. P. Co. v. Bobo Co.*, 107 S. C., 284, 92 S. E., 720, 721: "A mortgage lien was not placed upon the property before the property was brought upon the premises; on the contrary, so far as the testimony shows, the property was on the premises before any mortgage lien was put upon it. By the very words of the statute, therefore, the mortgage has no preference over the rent claim."

All exceptions are overruled. The order appealed from is affirmed, except as modified.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.