13496

UNITED STATES HOFFMAN MACHINERY CORPORATION
v. HARRIS

(166 S. E., 613)

444

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Bomar & Osborne,* for respondent,

October 26, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The facts in this case are few and in the main undisputed. On January 6, 1928, one D. W. Lawton, a citizen of Spartanburg, ordered from the plaintiff, whose place of business was in New York City, two Hoffman pressing machines, and on the same date executed, as evidencing the unpaid part of the purchase price, a series of purchase-money notes, and a title retaining contract covering the machines. The contract provided that it should not be binding upon the company until accepted by it at its office in New York City; and, although the machines were shipped some time during the month of January, written acceptance by the company was not entered on the contract, until March 8th, and the contract itself was not recorded in the office of the register of mesne conveyances for Spartanburg County until March 13. 1928. Some time prior to February 9, 1928, the ma-

chines were received by Lawton and installed in a building rented by him from the defendant, Harris. Thereafter— just when, it does not appear—a partnership was formed between Lawton and A. M. Faucett. The terms of the partnership are not stated in the record, and they may have included only the operation of the plant, as there is nothing to indicate that Lawton conveyed to Faucett any interest in the two pressing machines. The business was operated under the name of the Hub City Cleaning & Pressing Club. On August 9, 1928, the pressing club vacated the building occupied by it, three months' rent, amounting to $225.00, being unpaid. Thereupon, the defendant took possession of the machines under his claim for rent. On January 12, 1929, the plaintiff brought this action in claim and delivery on his title retaining contract (chattel mortgage), for the possession of the machines or their value, $625.00; and under the requisition issued, the sheriff took possession of them and delivered them to the plaintiff, the defendant having refused to give them up.

On trial of the case, the plaintiff made a motion for a directed verdict upon the ground that the machines were sold to Lawton and not to the partnership, the chattel mortgage having been given by him, while the defendant was holding the property for a rent claim against the partnership and not against Lawton, and upon the further ground that the mortgage was placed on the property before the rent contract was entered into and before the property was put in the rented building. The defendant asked for a directed verdict on the ground that the machines were moved into the rented building prior to February 9, 1928, before the contract of sale was completed by its acceptance by the company on March 8, 1928, and upon the further ground that the title retaining contract was not recorded until March 13, 1928, more than a month after the machines had been moved into the building, and that the defendant had no no-

tice of any kind of the existence of such paper or its contents until after its recordation.

The Court granted the defendant's motion and directed a verdict for him for $225.00, with interest from August 9, 1928, and ordered that upon payment of that amount to him, with the costs of the action, the property in dispute be released and all interest of the defendant satisfied.

We think the trial Judge was unquestionably correct. Under the testimony, the question was narrowed down to one of notice of the title retaining contract held by the plaintiff. As already pointed out, the evidence was undisputed that the property was moved into the building of the defendant, the landlord, prior to February 9, 1928, the contract for rent having been made with Lawton before that time; that the chattel mortgage held by the plaintiff, referred to as the title retaining contract, was not recorded until more than a month after the property had been moved into the building, and that, therefore, the defendant had no constructive notice of the existence of such paper or of its contents until the date of its recordation; and there is nothing to show that he had any actual notice. It is also conceded that the machines were taken possession of by the defendant, after the building was vacated by the pressing club, and held by him for the unpaid rent; and he was deprived of such possession only by a process issuing out of the Court. The fact that Lawton formed a partnership with Faucett, after he had rented the building and purchased the machines and installed them therein, could not, as held by the Circuit Judge, affect the defendant's claim against the machines for rent.

Under this state of facts, the Circuit Judge could have reached no other conclusion than that announced by him. See Sections 5283, 5284, 5286 and 5519 of Vol. 3 of the Code of 1922; *Fidelity Trust & Mortgage Company v. Davis,* 158 S. C., 400, 155 S. E., 622, 626, and cases cited therein.

In the *Fidelity Trust & Mortgage Company case,* the Court, speaking through Mr. Justice Blease, now Chief Justice, said: "We think the landlord is a subsequent creditor within the meaning of this Section [5519], and, as between him and a third party claiming under an unrecorded agreement with the tenant, such unrecorded agreement is void."

To hold otherwise would open the door to fraud and collusion. And there can be no difference in this respect between an "unrecorded" agreement and one not recorded till after the landlord's rights and status have been fixed.

For the reasons stated by the Court, in his order, which will be reported, the plaintiff's motion for a new trial was also properly overruled.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE BONHAM dissent.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN (concurring): A complete statement of the facts in this appeal will be found in the opinions heretofore prepared. These facts will show that the question for determination is whether the landlord or the mortgagee is entitled to a first lien upon the pressing machines involved in the suit. In my judgment the decision must favor the landlord and I, therefore, concur in the opinion of Mr. Justice Stabler, for the reasons set forth in his opinion as well as the additional reasons hereinbelow set forth.

It does not appear that the landlord has ever availed himself of his right of distress and, hence, has never perfected his lien. This, however, is not necessary under the case of *Ex parte Stackley,* 161 S. C. at page 283, 159 S. E., 622, where it is held that, when the landlord has taken possession, distress is not necessary. The landlord did not actually

take possession of the property in the present case as the tenant abandoned the premises and the property, but his possession was recognized by the plaintiff by the fact that the action is in claim and delivery, which is always an action against the possessor of property. The appeal may, therefore, be considered in the light of a lien by the landlord for his rent and a lien by the seller of the property under a contract or agreement conveying the property to the tenant but reserving title in the seller.

The order for the machines was duly sent to New York and promptly filled by shipment. This order provided that to be valid it must be accepted by the shipper and this accepted order is the title retention contract or chattel mortgage involved in the appeal. It was not accepted in writing until about two months after the shipment was made. The overt act of shipping the machines was certainly an acceptance of the offer to purchase, as made by the proposed purchaser (*Moneyweight Scale Company v. Gordon Mercantile Company,* 102 S. C., 419, 86 S. E., 1060), but the main question still remains as to whether or not this shipment, constituting an acceptance of the offer, was an acceptance of the contract or the making of the contract. It was the intention of the parties that a mortgage be given, but the most the seller could claim, from the date of the shipment to the written acceptance of the offer, was that the seller held an equitable mortgage on the property. This equitable mortgage became a legal one when the written acceptance was signed in New York by the proper officers of the seller. Without notice, actual or constructive, the landlord was not bound by the equitable mortgage and the machines were placed upon the premises of the landlord before the legal mortgage was executed.

That the landlord is a subsequent creditor and is entitled to the protection afforded by the recording statute is firmly established by the *Fidelity Trust & Mortgage Co. case* in 158 S. C., 400, 155 S. E., 622. The quotation from this

opinion found in the opinion of Mr. Justice Stabler omits a sentence, as is pointed out in the opinion of the Chief Justice. The portion of the opinion omitted, as aforesaid, and quoted in italics by the Chief Justice is, I venture respectfully to say, misleading as a general proposition, although entirely applicable to the case then under consideration. Distress in that case was denied for the reason that the levy was made upon property which did not belong to the tenant in his own right. The unrecorded agreement was held to be void as against the landlord, who was a subsequent creditor, "such agreement being void, however, does not give the landlord the right to distrain upon such property." Why? Because the property was owned by the children of the tenant and not by the tenant himself. .

In the present case that qualification could not apply. If the tenant were the owner of the property and the unrecorded agreement, or chattel mortgage, were void as to the landlord, or if the seller were estopped from denying title in the tenant, I can see no reason why the protection by distress should be denied the landlord.

The present landlord would, of course, have no right of distress unless the tenant were the owner of the property, in his own right, or unless the holder of the mortgage, could not dispute the tenant's ownership. A decision on this point necessarily arises under the title retention contract.

In the case of *Singer Mfg. Company v. Smith,* 40 S. C. at page 531, 19 S. E., 132, 133, 42 Am. St. Rep., 897, the Court approves the following language of the Circuit Court: "The intention of the contracting parties in the case named could only be discovered from the words used in the contract, while the testimony in the present case stamps the transaction as a sale, and not as a 'lease' or hiring. * * * The instrument under consideration was evidently given to secure the purchase price of the sewing machine. It is settled law that, if a security for money is intended, that security is a mortgage, though it may not bear upon its face

the form of a mortgage. Conditional sales are not favored in law, and, where it is doubtful from the face of the instrument whether the contract is a conditional sale or a mortgage, the Courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice, and prevent fraud and oppression."

But even if the title had not passed, if there had been no sale, still the seller is not in position to dispute the ownership of the tenant or purchaser. In *Carroll v. Cash Mills,* 125 S. C. at page 341, 118 S. E., 290, 292, it is said: "The whole purpose of the recording acts is to prevent secret liens, to protect *bona fide* purchasers for value and subsequent creditors, who have relied on the apparent possession of the vendee, to purchase from him or to extend credit to him. When the vendor has thus led the purchaser or subsequent creditor to rely on the apparent title of the vendee, he is estopped from setting up his title in derogation of their rights. He still has the title; but, as against these classes of persons who have been misled by his conduct, the Court says he should not be allowed to show title. In such a retention of title agreement, the vendor retains the title to the goods until payment, and can only lose his right to set it up by his conduct in allowing others to think that the vendee has title."

These views, taken in connection with the opinion of Mr. Justice Stabler, cause me to concur in his opinion.

MR. JUSTICE BONHAM (dissenting).

This appeal is from an order of Hon. T. S. Sease, Circuit Judge presiding in the Court of Common Pleas for Spartanburg County, which directed a verdict in favor of the defendant, who is the respondent here. The following narrative gives the pertinent history of the occurrences out of which the litigation arose:

January 6, 1928, D. W. Lawton, of Spartanburg, S. C., addressed to United States Hoffman Machinery Corporation, 105 Fourth Avenue, New York City, a communication

which was dated at 139½ Morgan Square, Spartanburg, S. C., and which directed the company to ship to him two Hoffman Pressing Machines (describing them). After fixing the price and terms and times of payment, the writing contained this provision: "The title and ownership of said machine is to remain in United States Hoffman Machinery Corporation, its successors and assignees, until the full purchase price is paid in cash, and if default shall be made in the payment of any note or installment of the purchase price, the said Corporation, its successors or assignees, may at their option declare the entire amount unpaid and all unpaid notes immediately due and payable.   *   *   * "

The writing further contained the following stipulation: 'This agreement constitutes the whole contract between the parties hereto   *   *   *   This order shall not be binding on your Company until accepted by it at its office in the City of New York."

It was signed "D. W. Lawton, purchaser's signature," in the presence of two witnesses. At the same time D. W. Lawton made and delivered the notes called for by the contract. These were dated at 139½ Morgan Square, Spartanburg, S. C., January 6, 1928.

The contract bears upon its face this indorsement: "Accepted at the City of New York this, March the 8th, 1928, and filled with machines Nos. 17619 & 20."

Prior to February 1, 1928, D. W. Lawton, for the Hub City Cleaning & Pressing Company, a partnership composed of D. W. Lawton and A. M. Faucett, entered into an oral contract with J. T. Harris, the respondent, for the rent of a storeroom on Church Street in the City of Spartanburg. Here the presses were erected and the pressing club opened for business therein the 9th of February, 1928.

The title retaining instrument was lodged for record in the office of the Registrar of Spartanburg County March 13, 1928, and by error, was recorded under the name of D.

W. Lawter; this was changed to D. W. Lawton "10-13-28," which it is evident was intended for October 13, 1928.

The Hub City Cleaning & Pressing Company vacated the rented premises the 9th of August, 1928, being in arrears for rent for three months in the sum of $225.00. They left the pressing machines in the leased building. D. W. Lawton was in default on his notes for the purchase price of the pressing machines. September 26, 1928, the plaintiff —appellant here—made demand upon the respondent for the possession of the machines, giving him notice of its title retaining contract; the demand was refused. Thereafter, January 12, 1929, action in claim and delivery was begun by appellant, who gave the necessary bonds and took the machines in his possession. Respondent did not replevy them.

At the trial both parties made motion for directed verdicts. After argument his Honor directed a verdict for the defendant in these words: "We find for the defendant the property in dispute, or Six Hundred and Twenty-five Dollars, the value thereof."

After hearing argument on motion for new trial, his Honor passed an order fixing the amount due the defendant for rent at $225.00 with interest from August 1, 1928, and directed that, upon payment of that amount to defendant, and the costs of the action, "the property in dispute be thereupon released from the rent lien and all interests of defendant therein be satisfied." He refused the motion for new trial.

Appellant relies upon four exceptions to sustain this appeal.

The first exception charges error to the presiding Judge for that he overruled appellant's motion for directed verdict which was predicated upon this: "The uncontradicted proof was to the effect that the chattels in dispute were sold by appellant to D. W. Lawton under a title retaining contract

signed by D. W. Lawton, upon which there was past due and unpaid $590, etc."

We think the proof is conclusive that the property in dispute was the property of D. W. Lawton. The written contract of purchase shows that he bought it; he alone signed the contract, and he alone signed the notes. It is true that he took A. M. Faucett into a partnership with him, but the terms of the partnership are nowhere stated. They may have included only the operation of the plant. Certainly there is not a word of proof that Lawton ever conveyed to Faucett an interest in the two pressing machines sold to him by plaintiff. It is true that in his answer to the complaint the defendant, Harris, does say that he rented the premises to the Hub City Cleaning & Pressing Company, a partnership composed of D. W. Lawton and A. M. Faucett, but his testimony shows that his negotiations were wholly with Lawton; he knew nothing of Faucett as a partner in the business till afterward. Moreover, the presiding Judge permitted an amendment to the answer to conform it to the testimony. There can be no reasonable doubt that the pressing machines were the property of D. W. Lawton. But this was not in itself sufficient ground for the direction of a verdict in favor of defendant. There were other issues beside the question of ownership of these chattels which could determine the rights of the litigants.

Exceptions 2 and 3 are disposed of by what we have said in reference to Exception 1 and what we shall say of Exception 4, which is in effect, that it was error not to hold "that title retaining contract was actually accepted by appellant on the date of the shipment of the machines in January, 1928, and that the subsequent entry of acceptance on March 8 was only a clerical act not in any way affecting the legal rights of the parties thereto, established by the shipment under the order, the error being that the lien of the said title retaining contract attached to the said chattels immediately upon their shipping by appellant, and the said

chattels were therefore subject to the said lien when they were placed upon the rented premises, upon their arrival at Spartanburg, S. C., and that the said lien was therefore superior to any lien which the landlord of said rented premises may have acquired for rent."

This exception presents the crux of the whole case. When did the title retaining contract become effective?

Respondent vigorously contends that the contract did not become of force until it was accepted by the machinery company, and that the entry on the contract shows that it was not so accepted till March 8, 1928. With equal vigor appellant argues that the machinery company accepted the contract when it shipped the pressing machines in January. It was already of force so far as Lawton was concerned; there was nothing remaining for him to do to make it binding on him. It only remained for appellant to accept it for it to become binding on it. Lawton said in the contract, already signed by him, "this shall not be binding on your Company until accepted by it at its office in the City of New York."

This provision does not prescribe that the acceptance shall be in writing. Can acceptance be made in any other way?

"Anything that amounts to a manifestation of a formed determination to accept, communicated, or put in the proper way to be communicated to the party making the offer would doubtless complete the contract." 6 R. C. L., 606, citing cases.

How better could acceptance be manifested in the present case than by the act of shipping the pressing machines to Lawton?

"An assent to an offer which is requisite to the formation of the agreement is an act of the mind; and is either expressed or evidenced by circumstances from which such assent may be inferred." 6 R. C. L., 605, § 28.

"As a general rule if a particular mode of acceptance is prescribed by the offer the condition must be complied with,

unless it is waived. But while a party making an offer may specify how it shall be accepted in order to complete the contract, yet, if he does not so specify, anything which in law would be an acceptance is sufficient. And where the acceptance actually reaches the person who has made the offer it is immaterial by what mode it is sent. *So an offer in writing may be accepted orally, nor need assent be manifested by signing the offer.* But an offer may prescribe for its acceptance in writing, in which case a verbal acceptance will be insufficient unless it is assented to by the offerer. The right to receive written notice of acceptance may be waived by parol. An oral acceptance may be good, notwithstanding there has been a previous ineffectual attempt to accept in writing." (Italics added.) 13 C. J., 280, 281, § 85.

"Appellant contends that the judgment of the civil Court should have been reversed because there never was a valid contract for the manufacture and sale of the truck, for the reason that the written order therefor was never countersigned by an officer of the company, as required by its express terms. It is quite fundamental that parties may become bound by the terms of a contract, even though they do not sign it, where their intention to do so is otherwise indicated. Manifestly the provision requiring the order in question to be countersigned by an officer of the company was inserted for the benefit of the company, and to prevent its liability thereon until ratified by some one occupying a position of responsibility with the company. * * *

"Conceding that the order was never countersigned by an officer of the company, as required by its terms, the inquiry is whether the company otherwise became bound thereon. It is undisputed that shortly after the date of the order the company started work on the truck to be delivered in fulfillment thereof, that appellant was cognizant of the fact, that he secured work in the factory in order that he might work on 'his' truck and become familiar with its construction, that delay in its completion was the subject of frequent complaint and discussion, and that he even had the

truck out on trial trips. If this is not sufficient to indicate an acceptance of the order by the company the receipt and retention by it of $450.00 down payment is certainly sufficient to estop it from denying its acceptance of the order." *Albright v. Stegeman Motor Car Company,* reported in 168 Wis., 557, 170 N. W., 951, 952, 19 A. L. R., 463, sustained by the citations from a number of jurisdictions.

"But ordinarily written acceptance is not essential, although the offer or order provides that acceptance shall be made in that manner. At least it has been held that the shipping of goods ordered on a written form constitutes an acceptance of the contract, although the order expressly provided that it would become a contract 'upon the acceptance by the dealer in the space below,' and the seller never wrote in an acceptance. *Hercules Mfg. Co. v. Wallace* (1921), 124 Miss., 27, 86 So., 706. In such a case the provision requiring written acceptance is for the benefit of the offeree and may be waived by him."

From annotation in the case of *Wood & B. Co. v. D. E. Hewit Lumber Co.* (89 W. Va., 254, 109 S. E., 242), reported in 19 A. L. R., 467.

It is manifest that plaintiff's title retaining provision attached to the goods, the pressing machines, before the contract of rent was made and before they went into the rented building.

In our present case D. W. Lawton, who ordered the pressing machines, did not stipulate that acceptance be in writing, but if it had been so required, he waived its nonperformance by accepting the chattels which were shipped to him F. O. B., immediately on the receipt of the order. It may be said further that Lawton is making no point that the contract was not accepted till March 8, 1928, that objection is made by his landlord. Conceding the right of the landlord, the defendant here, to make it, it is not tenable; the proof is conclusive that the offer was accepted and the goods shipped in January, and the contract of rent was not made till February and the tenancy did not begin till February 9th.

The point is made that the title retaining contract was not recorded till March 13, 1928, and was then incorrectly recorded and indexed as for "D. W. Lawter," instead of "D. W. Lawton."

It does not appear that the defendant suffered by this. He testified that he never examined the books to see if there were any incumbrances on the chattels in his building rented by Lawton, until the tenants were behind with their rent. He seems to have rested upon the assumption that he, as landlord, had a lien on the tenant's goods superior to all other liens and claims of priority, in which assumption he was in error. In the well considered case of *Fidelity Trust & Mtg. Co. v. Davis et al.,* 158 S. C., 400, 155 S. E., 622, 625, Mr. Associate Justice Blease, now Chief Justice, made an elaborate, thorough study and statement of the laws affecting the relations of landlords and tenants and the rights of others as related to them. He announces these conclusions, *inter alia:*

"It is thus seen that these statutes give a landlord no lien on the personal property of his tenant, other than on the crops raised on the demised premises for rent due by his tenant. While the landlord has no lien on such personal property, yet the statutes have preserved to him, in a modified form, his common-law right to distrain on such property. * * *

"An analysis of the authorities will admit of the following propositions:

"(1) The landlord is entitled to as much as one year's rent in arrears to be paid by the execution, or other creditor, before the goods of his tenant can be seized under execution or other pretense. Section 5283, Civ. Code 1922. But this provision is subject to the amendment of 1878, limiting the distress to the property of the tenant owned in his own right. *Dial Warehouse Co. v. Levy,* 39 S. C., 265, 17 S. E., 776.

"(2) The landlord is precluded from distraining upon his tenant's property over which the tenant gave a mortgage (a) before the rent contract was entered upon, or (b) before such property was brought upon the demised premises, unless the landlord first pay the mortgage debt. Section 5286, Civ. Code 1922; *Morgan Silver Plate Co. v. Bobo Undertaking Co.*, 107 S. C., 280, 92 S. E., 720.

"(3) The landlord may distrain upon the personal property of his tenant, even though the tenant has made an assignment for the benefit of his creditors or put a mortgage thereon, provided such assignment or mortgage be executed after the contract of tenancy has been entered upon. Section 5285, Civ. Code 1922."

This opinion was concurred in by all the members of the Court. It was affirmed by the case of *Ex parte Stackley and T. S. Burch* (*Lucas & Brunson v. Gotham Braid Works, Inc.*), reported in 161 S. C., 278, 159 S. E., 622. It is true that in the case last mentioned the landlords were allowed their claim of preference, although they had not distrained for their rent, but this was allowed because the property had gone into the hands of a receiver before they could levy their distress for rent. In other words they were not guilty of laches in the matter. The property was in the hands of a receiver appointed by the Court. It was in *custodia legis*. If the landlords had attempted to levy a distress warrant, they would have been in contempt of Court. *In re. Bishop* (D. C.), 153. F., 304, 305.

In the present case no levy was made, nor attempted to be made although the defendant, respondent, knew of the title retaining contract from September 26, 1928, when plaintiff's attorneys notified him of it and demanded possession of the pressing machines. The proceedings in claim and delivery were not begun until January 12, 1929, yet respondent made no effort to levy upon the property. Evidently he relied upon his supposed prior lien for rent.

But this question has little force now; the matter is settled by the conclusion of this Court that the title retaining contract, which is in effect a chattel mortgage, had been placed upon the property before the rent contract had been entered upon, and before the property was placed upon the rented premises.

In the case of *Morgan Silver Plate Co. v. Bobo Undertaking Co. et al.,* 107 S. C., 280, 92 S. E., 720, 721, Mr. Associate Justice Gage, considering this very question and delivering the opinion of this Court, said:

"(1) 'In * * * cases where property distrained for arrears of rent is subject to the lien of a mortgage placed upon said property before the rent contract was entered upon,' the mortgage debt shall have precedence of payment.

"(2) 'In * * * cases where property, distrained for arrears of rent, is subject to the lien of a mortgage placed upon said property before the * * . * said property was brought upon the rented premises,' the mortgage debt shall have precedence of payment."

It is apparent that it was error to refuse to direct a verdict for plaintiff. The judgment of the Court below should be reversed, and the case remanded with instructions to order a verdict for plaintiff under Rule 27.

This opinion was written as the leading opinion of the case, but since a majority of the Court do not agree in it, it becomes the dissenting opinion.

Mr. Chief Justice Blease (concurring) : I concur in the opinion of Mr. Justice Bonham for the following reasons:

The property in question was purchased by Lawton, the tenant, on January 6, 1928, and on that day he executed the title retaining contract covering the property. The defendant, the landlord, did not rent the premises until February 1, 1928, and the rent contract was entered upon on the 9th day of February. The property was not brought upon the premises until after February 1, 1928. *The landlord had no*

*lien on the property in question for rent. Fidelity Trust &*
*Mortgage Co. v. Davis,* 158 S. C., 400, 155 S. E., 622.

Section 5286, 1922 Code (Section 8820, 1932 Code),
deprived the landlord of the right to distrain upon the prop-
erty for rent *if the mortgage was placed upon the property*
*before the rent contract was entered upon, or before it was*
*brought upon the rented premises,* unless the landlord first
paid the mortgage debt, in which event he might have dis-
trained for the amount so paid on the mortgage debt as well
as for the amount of rent due. There is nothing in that
section that makes recordation necessary before thus depriv-
ing the landlord of the right to distrain. The only require-
ment is that the mortgage be placed upon the property. As
between the landlord and tenant, it may never be recorded.
If the mortgage exists, it deprives the landlord of his right
to distrain. In the case at bar, the property was mortgaged
before it was brought upon the premises and before the rent
contract was entered upon.

The landlord here obtained no judgment against the ten-
ant for the amount of rent alleged to be due, and conse-
quently, no execution and levy were had.

Conceding that the landlord is a creditor within the mean-
ing of Section 5312, 1922 Code (Section 8875, 1932 Code),
and that as between him and the mortgagee (the plaintiff)
he is a subsequent creditor without notice, that fact alone
does not give the right to distrain upon the property for
rent. *Fidelity Trust, etc., Co. v. Davis, supra.*

Mr. Justice Stabler in his opinion has overlooked, in his
quotation from the *Fidelity Trust & Mortgage Co. case,*
an important sentence following what he did quote. It was
this: *"Such agreement being void, however, does not give*
*the landlord the right to distrain upon such property."* (Ital-
ics added.)

I think the opinion of Mr. Justice Stabler is in accord
with the holding of the Court in *Simpson v. McDonald,* 79
S. C., 277, 60 S. E., 674, but that case was expressly over-

ruled by the case of *Fidelity Trust & Mortgage Co. v. Davis, supra.*

If the landlord had no lien upon the property for his rent, if he had no right to distrain thereon, if he made no levy thereon under execution against the tenant, then he had no right to the possession, and in this action of claim and delivery, the plaintiff is entitled to the possession of the property.

If the landlord had obtained judgment against the tenant and levied upon the property under execution, he probably would have been in position to raise the question of subsequent creditor without notice, but I do not think that question can be raised here. If the plaintiff attempted to remove the property from the State, the landlord might have attached the same, entered suit against Lawton, the tenant, and, after obtaining judgment, he might have levied on the property. In that way, the question of subsequent creditor without notice may have been raised.

### Order on Petition for Rehearing

*Per curiam.*

The appellant in this case asks for a rehearing. It not appearing, however, that the Court in its opinion heretofore filed, overlooked, or disregarded any material question of law or of fact, it is ordered: That the petition be dismissed and the order staying the remittitur revoked.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Carter, and Mr. W. C. Cothran, Acting Associate Justice concur.

Mr. Chief Justice Blease: While I did not agree with the conclusion of a majority of the Court in this case, I see no reason for a rehearing. The Court carefully considered the cause for some time after it was first heard. It is evident that a majority of the members of the Court will not change their views, and a rehearing will be entirely useless. Therefore, I favor a dismissal of the petition for rehearing.

MR. ASSOCIATE JUSTICE BONHAM: I am constrained to dissent from the order which denies the petition for rehearing.

The rule laid down in the leading opinion, to the effect that the landlord being in possession of the property it was not necessary for him to distrain for his rent in order to have priority over the vendor of the property under a title retention contract, is in direct repudiation of the rule laid down by this Court in the cases of *Fidelity, etc., Co. v. Davis*, 158 S. C., 400, 155 S. E., 622, and *Ex parte Stackley* (*Lucas & Brunson v. Gotham Braid Works, Inc.*), 161 S. C., 278, 159 S. E., 622. The doctrine announced in this main opinion seems to me to be fraught with danger. If it becomes the recognized law of this jurisdiction, under it any landlord may take possession of the property in dispute, and *ipso facto,* he becomes the prior lien creditor, although by the express dictum of this Court he has no lien for rent until he distrains for it. The decision is apt to promote litigation.

Nor may respondent rely upon the doctrine of subsequent creditor without notice, because under the facts of this case he would be in conflict with the opinion of the Court in the case of *Carroll v. Cash Mills,* 125 S. C., 332, 118 S. E., 290.

I think there should be a rehearing.